Warren Television Corporation v. Commissioner.
Warren Television Corp. v. Commissioner
Docket Nos. 65062, 66636.
United States Tax Court
T.C. Memo 1958-211; 1958 Tax Ct. Memo LEXIS 13; 17 T.C.M. (CCH) 1053; T.C.M. (RIA) 58211; December 15, 1958
Lee W. Eckels, Esq., 2900 Grant Building, Pittsburgh, Pa., for the petitioner. Charles A. Boyce, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The Commissioner has determined income tax deficiencies against petitioner for the years and in the amounts following: Deficiencies
Addition to Tax
Sec. 293(a),
Year
Income Tax
I.R.C. 1939
1953
$26,151.26
$1,307.56
1954
35,632.32
1955
25,552.22
The cases have been consolidated for hearing and decision. The issues framed by the pleadings are (1) whether respondent has erred in including in petitioner's *14 gross income for the years at issue amounts paid by persons using petitioner's television antenna at the time of attachment of their receiving sets to petitioner's facilities, (2) whether petitioner is entitled to a net operating loss deduction for the year 1955 and (3) whether petitioner is subject to an addition to tax for the year 1953 under section 293(a), Internal Revenue Code of 1939. The last issue has been conceded by respondent on brief. The second issue is stipulated to be dependent upon our decision of the first issue. Findings of Fact Most of the facts having been stipulated they are found accordingly. Petitioner is a corporation organized and existing under the laws of the State of Delaware and having an office and place of business at 403 Laurel Street, Warren, Pennsylvania. Petitioner's United States corporation income and excess profits tax return for the taxable year ended December 31, 1953 (Docket No. 65062), and its United States corporation income tax returns for the taxable years ended, respectively December 31, 1954, and December 31, 1955 (Docket No. 66636), were timely filed with the district director of internal revenue for the Pittsburgh district at Pittsburgh, *15 Pennsylvania. Petitioner, in keeping its books and reporting its income in its Federal corporation income tax returns for and during the taxable years involved, regularly used an accrual method of accounting. Following its incorporation on December 31, 1952, petitioner issued 500 shares of its capital stock without par value for $31,000. Such capital was paid in by and such shares of stock were issued between January 2, 1953, and March 20, 1953, to Stuart J. Myers and Robert E. Dunham. Petitioner did not report in its returns as a part of its gross income for the taxable years involved the following payments received or accrued by it in such taxable years: Year
Amount
1953
$83,348.27
1954
94,761.23
1955
68,990.50 Of the $94,761.23 received during the taxable year 1954, $48,262.73 was received by petitioner on or after January 1, 1954, and not later than June 21, 1954, and $46,498.50 was received or accrued on or after but not later than December 31, 1954. In its 1953 return, petitioner disclosed the accrual of the $83,348.27 referred to above which sum appeared as a credit to "Paid-in or capital surplus" account on such return. In its 1954 return, petitioner *16 disclosed the accrual of the $94,761.23 referred to above reflecting credits to petitioner's "Paid-in or capital surplus" account on such return of the $48,262.73 accrued in the taxable year 1954 on or prior to June 21 of that year and to the "Buildings and other fixed depreciable assets" account on such return of $46,495.50 accrued by petitioner on or after June 22, 1954. In its 1955 return, petitioner disclosed the accrual of the $68,990.50 referred to above reflecting credits to petitioner's "Paid-in or capital surplus" account of $1,202 and to its "Buildings and other fixed depreciable assets" account of $67,788.50. The title of the account shown in petitioner's three returns referred to as "Paid-in or capital surplus" was recorded on petitioner's books as "Contributed Capital." No change was made during or after the 3 taxable years here involved in the title or caption of such "Contributed Capital" account on petitioner's books. Petitioner is engaged in the business of conducting what is commonly known as a community television service in the Borough of Warren, Pennsylvalia. Warren is so situated geographically and topographically that reception of the visual portion of *17 the television broadcasts is unsatisfactory, even by the owners of television sets having their own individual outside antennas. However, this condition can be and has been effectively cured by the installation of a community television service antenna by petitioner on the top of a hill outside the borough limits of Warren. From such antenna, electronic equipment feeds the visual and aural broadcasting signals from 3 different television stations through coaxial cable into Warren, where many miles of branch lines radiate along the streets of the Borough of Warren, to which branch lines owners of television sets desiring such service may "hook on" their respective television sets, thus enabling them to receive a good visual and aural signal from each of the 3 television broadcasting stations. Petitioner did not have adequate financial resources to enable it (using only its own funds) to construct the antenna, which is carried on a guyed tower, 85 feet in height, the coaxial cable and branch lines systems necessary to supply adequate antenna service to the television set owners of Warren. Prior to commencement of the construction of any of its service facilities, petitioner solicited *18 potential customers. Solicitation of potential customers continued throughout the taxable years involved. Such solicitation by petitioner consisted solely of personal oral solicitation by officers and employees of petitioner and the publication of 2 newspaper advertisements in 1953 in the "Times-Mirror" newspaper of general circulation published in the Borough of Warren. Persons and business establishments desiring to avail themselves of petitioner's service were required to sign an application designated as TELEVISION SERVICE APPLICATION. Only persons and business establishments executing such service application forms and paying the "Capital Contribution" therein described were, during the taxable years herein involved, permitted to "hook on" or connect their respective television sets to petitioner's services, the actual work of "hooking on," connecting or installing being performed by employees of petitioner. Upon execution of the form, Television Service Application, and payment of the "Capital Contribution" referred to therein, each residential subscriber was entitled to and did reseive a certificate designated as "Capital Contribution Certificate." The amounts in dispute *19 herein were received or accrued pursuant to the applications described above. However, petitioner did not receive and would not have accepted any "Capital Contribution" payment made to it pursuant to any application unless and until petitioner was prepared to "hook on" or connect the particular subscriber of an application to its lines. The amount of the "Capital Contribution" was fixed by petitioner at $125 for residential subscribers and $150 for commercial or business establishments. The initial "contribution" by the subscriber did not alone entitle him to petitioner's services. A monthly "maintenance rental fee" of $3.50 for residential subscribers and $6 for commercial establishments was required by petitioner or the service could be discontinued. The monthly service charges specified in the applications made by petitioner to its customers during the taxable years involved were not regulated by any Federal, State or local government agency. Petitioner made no "hook on," connection or installation charge at any time prior to, at or after the time of hooking on or connecting a subscriber with petitioner's lines to any subscriber of an application who paid his or its "Capital *20 Contribution" to petitioner pursuant to such application, except that in cases where a subscriber using petitioner's service changed his residence or business establishment but did not dispose of his "Capital Contribution Certificate." If the subscriber desired petitioner's service at his new residence or business establishment, petitioner did make a charge for hooking on, connecting or installing its service at the new residence or new business establishment. A holder of a "Capital Contribution Certificate" issued by petitioner had none of the rights and privileges accorded under the laws of the State of Delaware to holders of shares of capital stock of a corporation incorporated under the laws of such State. Thus, no holders of a "Capital Contribution Certificate" had any voting rights, any right to receive dividends payable to shareholders of petitioner or any right to receive any distribution in liquidation of the corporation which would be payable to holders of petitioner's capital stock. During the years here involved petitioner purchased from its subscribers "Capital Contribution Certificates" which had been issued to them on the payment to petitioner in each instance of *21 $125. The numbers purchased for each year at issue, total amounts expended in each year for such purchases and the average amount paid for each certificate n each year are as follows: Total
Average
No. of
payments to
payment for
certifi-
holders of such
each such
cates sur-
certificates so
certificate
Year
rendered
surrendered
surrendered
1953
7
$ 460.00
$65.70
1954
26
2,522.00
97.00
1955
66
6,580.00
99.53
In consideration for the $125 payments by residential subscribers and $150 payments by business subscribers, petitioner rendered services to such subscribers during the years at issue. Opinion This case is indistinguishable in principle from Teleservice Co. of Wyoming Valley, 27 T.C. 722, affd. (C.A. 3, 1958) 254 Fed. (2d) 105, certiorari denied 357 U.S. 919, and it may be factually placed on all fours within the factual framework of that case. Petitioner raises no issue here not disposed of there and no other issue which we think merits discussion with the exception of its claim that sections 118 and 362 of the Internal Revenue Code of 1954 require a conclusion *22 contrary to that reached in Teleservice so far as applicable to the years here at issue. On the authority of Teleservice, supra, we hold for the respondent's determination of deficiency for the taxable year ended December 31, 1953, and for that portion of 1954 ending June 21 of that year. Petitioner contends that the legislative history of sections 118 and 362 of the 1954 Code compel the conclusion that the payments to petitioner by subscribers here involved were correctly not includible in petitioner's gross income. It is sufficient to say, however, that the Court of Appeals for the Third Circuit was in our view eminently and obviously correct in holding that, because payments were not "contributions to capital" but were instead payments for services, necessarily sections 118 and 362 could have no application to the issue before it. We see no indication that in those sections Congress intended to or did redefine a "capital contribution." For that reason we uphold the determination of deficiency of respondent for the period June 22 to December 31, inclusive, of 1954 and the taxable year 1955. Decisions will be entered under Rule 50.